IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHASITY WALLACE; RAYMOND WALLACE; and CHASITY WALLACE and RAYMOND WALLACE, on behalf of K.R.W., a minor,<br><br>    Plaintiffs,<br><br>v.<br><br>CHOCTAW NICOMA PARK SCHOOL DISTRICT,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  No. CIV-21-0077-R<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER**

Before the Court is Defendant Choctaw Nicoma Park School District's Motion for Summary Judgment (Doc. No. 37), Plaintiffs' Response (Doc. No. 42), and Defendant's Reply (Doc. No. 43). Upon consideration of the parties' filings, the Court GRANTS the Motion for Summary Judgment and REMANDS Plaintiffs' negligence claim arising under Oklahoma law to the District Court of Oklahoma County.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When asserting that a fact is genuinely disputed, a party must either cite "to particular parts of materials in the record, including depositions, documents, . . . affidavits, . . . admissions, interrogatory answers, or other materials," or show that those materials "do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). The movant bears the initial burden of demonstrating that no genuine issue of material fact

exists. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 712–13 (10th Cir. 2014). Still, the non-moving party must rely on more than "[t]he mere existence of a scintilla of evidence in support of [its position]; there must be evidence on which the [trier of fact] could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see also Celotex Corp.*, 477 U.S. at 323-33 (1986) (explaining that the opposing party must make a showing sufficient to establish the existence of the elements essential to that party's case).

On or about September 16, 2019, Megan Gassaway, a special education paraprofessional and substitute teacher at the Nicoma Park Elementary School, contacted the Oklahoma Department of Human Services ("DHS") regarding suspected child abuse. The suspected victim, K.R.W., was a six-year-old child in Ms. Gassaway's special education class. K.R.W. has "autism spectrum disorder" and was considered "non-verbal" at the time. (Doc. No. 37, at 7, ¶ 2; Doc. No. 42, at 8, ¶ 2). After her parents—Plaintiffs Chasity and Raymond Wallace—visited with a DHS employee regarding Ms. Gassaway's referral, K.R.W. was taken to the University of Oklahoma Children's Hospital to be examined by a medical professional. On the way to the hospital, Chasity Wallace spoke with Britney Chiles, an applied behavior analysis ("ABA") therapist who "assist[ed] K.R.W. with her school work and life skills" at school. (Doc. No. 37, at 9, ¶ 7; Doc. No. 42, at 10, ¶ 7). Chiles told Ms. Wallace that the bruises observed on K.R.W. which led to the DHS referral were "probably from the chair that [the paraprofessionals were] tying her

into." (Doc. No. 37, at 11, ¶ 14; Doc. No. 42, at 11, ¶ 14). After the examination revealed no signs of parental abuse, the Wallaces requested an emergency meeting with Defendant Choctaw Nicoma Park School District (the "District") to discuss K.R.W.'s Individualized Education Program ("IEP"). (Doc. No. 37, at 11, ¶ 16; Doc. No. 42, at 11, ¶ 16).

The next morning, September 17, 2019, Britney Chiles informed Ms. Wallace that Amanda Duke, another ABA therapist, had observed K.R.W. buckled into a special chair while in class. (Doc. No. 37, 11-12, ¶ 17; Doc. No. 42, 11, ¶ 17). During the emergency IEP meeting held later that day, a note was entered into K.R.W.'s IEP, at Plaintiffs' request, stating that "a chair with a seatbelt [would] not be used in the classroom," and that K.R.W. would not be subject to restraint "unless she [was] a danger to herself or others." (Doc. No. 42-3, at 9). Plaintiffs do not allege that K.R.W. was ever restrained after September 16, 2019.

The District contends that the "special chair" referenced by Ms. Chiles was a Rifton "Compass Chair" designed for children with special needs. (Doc. No. 37-3, at 2, ¶¶ 3-6; Doc. No. 37-4). Compass Chairs are built to accommodate an optional cloth seatbelt that buckles when needed for safety or postural support.[1] (*See* Doc. No. 37-4). Although they never "witnessed K.R.W. buckled into any chair" (Doc. No. 37, at 13, ¶ 22; Doc. No. 42, at 12, ¶ 22), K.R.W.'s parents allege that she was "routinely placed . . . in a restraint chair." (Doc. No. 42, at 5). While Plaintiffs do not contend that K.R.W. was restrained after September 16, 2019, they claim that "there is evidence of other students being improperly

---

[1] Rifton Compass Chair Brochure, https://riftoncdn.azureedge.net/-/media/files/rifton/product-brochures/compass-chair-brochure (last visited Dec. 8, 2022).

restrained." (Doc. No. 42, at 11, ¶ 19). K.R.W. continued to attend school at Nicoma Park Elementary for two years after this incident. She transferred to another school district in Fall 2021. (Doc. No. 37-1, at 3).

Plaintiffs assert three claims: (1) a claim brought under 42 U.S.C. § 1983 for violation of K.R.W.'s substantive due process rights; (2) a state law negligence claim; and (3) a claim in which they argue—for the first time in the Response to this Motion—that K.R.W. was seized in violation of the Fourth Amendment. Defendant denies that K.R.W. was ever restrained, however, they argue that even if she was, "the School District is entitled to judgment as a matter of law on both claims."[2] (Doc. No. 37, at 14).

I. **Substantive Due Process Claim**

When a claim is brought under 42 U.S.C. § 1983 against a municipality—or in this instance, a school district—two separate issues must be analyzed: (1) whether the plaintiff's injuries were caused by a constitutional violation, and if so, (2) whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992); *see also Nation v. Piedmont Indep. Sch. Dist. No. 22*, No. 21-6123, 2022 WL 4075595, at *4 (10th Cir. Sept. 6, 2022) ("Because [d]efendant is a public-school district, the municipal-liability framework applies."). A school district may be responsible "where—and only where—a deliberate choice to follow a course of action [was] made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*,

---

[2] The District assumes for purposes of this Motion that K.R.W. was restrained in a chair. (Doc. No. 37, at 14; Doc. No. 43, at 5, ¶ 1).

4

475 U.S. 469, 483 (1986). In short, a school district "cannot be held vicariously liable for the acts of its employees; it is liable only for its own acts—that is, 'when the execution of [its] policy or custom inflicts the injury.'" *Nation*, 2022 WL 4075595, at *4 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)); *see also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692 (1978) (Section 1983 "cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor.").

> A municipal policy or custom may take the form of (1) "a formal regulation or policy statement"; (2) an informal custom "amoun[ting] to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law"; (3) "the decisions of employees with final policymaking authority"; (4) "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval"; or (5) the "failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused."

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Brammer–Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189–90 (10th Cir.2010)) (internal quotation marks and citations omitted). Once a municipal policy or custom has been established, the plaintiff must show "a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997). The policy or custom must be the "moving force of the constitutional deprivation" before liability may attach. *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (10th Cir. 1981) (quoting *Monell*, 436 U.S. at 694). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee

5

to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Brown,* 520 U.S. at 405.

Defendant contends that it is not liable under § 1983 because "there is no evidence that any alleged injury to K.R.W. was caused by an official policy or established custom of the School District." (Doc. No. 37, at 15). In response, Plaintiffs argue that the practice of restraining children with special needs in chairs was "in accordance with the School District's custom, policy, and/or practice," and that the "chairs were placed in special education classrooms" without "training," "supervision," "guidelines," or "monitoring of their use." (Doc. No. 42, at 6). Although the chairs may be used to support a child's posture, Plaintiffs assert that they were used to restrain children—like K.R.W.—who do not have postural issues. (Doc. No. 42, at 6). To determine whether a District policy or custom led to K.R.W.'s injuries, the Court must evaluate the evidence in light of the various forms that a municipal policy or custom may take. *See Bryson*, 627 F.3d at 788.

At the outset, the Court finds that Plaintiffs have not demonstrated that "a formal regulation or policy statement" was issued by the District endorsing the practice of restraining children in chairs. *Id.* (internal quotation marks and citations omitted). Moreover, Plaintiffs have not presented evidence sufficient to establish that anyone "with final policy making authority" approved of improperly restraining children in chairs; nor have Plaintiffs shown that final policymakers ratified the decisions of subordinates to

confine children in such a manner.³ *Id.* The Tenth Circuit has acknowledged that "[w]hether a school administrator is considered a policymaker (a final decisionmaker on relevant matters) depends on the specific circumstances of the case." *Nation*, 2022 WL 4075595, at *4 (10th Cir. Sept. 6, 2022). Plaintiffs have provided no evidence that any administrator was aware of any allegations of improper restraint prior to K.R.W.'s emergency IEP meeting held on September 17, 2019. Plaintiffs do not contend that K.R.W. was ever restrained after this meeting, and they provide no evidence to demonstrate that other children were improperly restrained thereafter. The mere presence of chairs which can be used to provide postural support, or temporarily restrain a child in danger of harming herself or others, is insufficient to establish that staff members were authorized by those with final policy-making authority "to restrain children at their own personal whim." (Doc. No. 42, at 17).

As to the claim that the District maintained a "practice" of restraining children in chairs, Plaintiffs rely on Brittany Chiles' affidavit in which she avers that she witnessed K.R.W. "strapped in a chair at least once," and that the practice of seat-restraint was "used [on] more than one occasion."⁴ (Doc. No. 42, at 20; Doc. No. 42-1, at 2, ¶¶ 4, 7). Plaintiffs, however, never asked Ms. Chiles how many times K.R.W. was buckled into the chair.

---

³ Under Oklahoma law, each school district has a board of education responsible for creating "a complete and comprehensive set of written policies." Okla. Admin. Code 210:10-1-7. Superintendents have "a duty to implement the written policies of the board of education." *I. T. K. v. Mounds Pub. Sch.*, 451 P.3d 125, 140 (Okla. 2019).

⁴ Although Plaintiffs and Brittany Chiles claim that another ABA therapist, Amanda Duke, told them about her own concerns regarding the restraint of children in chairs at the school, the Court has not been provided any evidence to support these claims.

(Doc. No. 37-1, at 17; Doc. No. 37-2, at 13). Although Ms. Chiles claims that she "witnessed K.R.W. [seated] in a special chair multiple times," the allegation that K.R.W. merely sat in the chair—unbuckled—is insufficient to establish an informal custom of improper restraint in violation of the Constitution.[5] (Doc. No. 42-1, at 2, ¶ 4). Plaintiffs do not offer any other deposition, document, affidavit, or other material as evidentiary support for the assertion that K.R.W., or other children, were routinely restrained in chairs at the school. Thus, a reasonable jury could not find that the District improperly restrained children in chairs as part of a widespread practice "so permanent and well settled as to constitute a custom or usage with the force of law." *Bryson*, 627 F.3d at 788.

Finally, Plaintiffs claim that the District failed to train and supervise its employees regarding the use of the chairs due to a "deliberate indifference to the injuries that may be caused." *Bryson*, 627 F.3d at 788 (internal quotation marks and citation omitted).

> The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction, such as when a municipality fails to train

---

[5] There is some ambiguity as to whether Brittany Chiles saw K.R.W. buckled into a chair more than once. (*Compare* Doc. No. 42-1, at 2, ¶ 4 ("I . . . witnessed K.R.W. in a special chair multiple times and strapped in a chair at least once") *with id.*, at ¶ 7 ("I . . . believe based on my eye witness accounts . . . that the restraints used by Nicoma Elementary were a common custom and practice when K.R.W. was roaming. This is based on my eye witness account of the chair and restraint being used [on] more than one occasion."). Regardless of whether K.R.W. was restrained once, or more than once, Plaintiffs have failed to present evidence establishing that a practice of restraining children was widespread, or that anyone with final policymaking authority was aware of such a practice.

an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations.

*Barney v. City of Pulsipher*, 143 F.3d 1299, 1307-08 (10th Cir. 1988) (internal quotation marks and citations omitted). The District's "culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Although they contend that chairs with attached seatbelts were utilized by District staff members without prior training, Plaintiffs provide no evidence to back their claim. (See Doc. No. 42, at 6, 13, 17, 20, and 25). Plaintiffs assert that "[t]he Disputed Facts section of this response clearly show[s] a long-standing custom of permitting untrained . . . use of restraint in . . . [the] District's special education classrooms. This is verified by the Affidavits of Denise Lamb, Megan Gassaway and ABA therapist Brittany Johnson Chiles." (Doc. No. 42, at 20). After reviewing the referenced affidavits, however, the Court finds the opposite. Denise Lamb and Brittany Chiles make no mention of whether school staff members received training related to the physical restraint of students in their respective affidavits (Doc. No. 37-3; Doc. No. 42-1). Furthermore, Megan Gassaway avers that:

> During my employment with the School District, and prior to the 2019-2020 school year, myself and other employees who work with special education students have been provided with training regarding the physical restraint of special education students. This training took place during annual in-service trainings at the beginning of each school year and various other training sessions [were] held periodically throughout the school year. The content of the training I was provided is consistent with the guidelines set forth in the Oklahoma State Department of Education Special Education Process Guide.

(Doc. No. 37-5, at 2, ¶ 9). Plaintiffs' assertion that Ms. Gassaway's affidavit verifies that the District permitted untrained use of restraint in special education classrooms is false.

Furthermore, Plaintiffs have not offered evidence to establish that any school administrator acted with deliberate indifference by allowing teachers to improperly restrain children in chairs after the Wallaces notified the District of their concerns on September 17, 2019. Accordingly, the Court finds that Plaintiffs have failed to cite evidence establishing a "failure to adequately train or supervise employees" in the proper use of chairs with seatbelts in classrooms.

Having determined—based on the evidence—that a reasonable jury could not find that the District had a municipal policy or custom for restraining children in classrooms, the Court finds that Defendant has shown that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law.[6] The Court need not decide whether K.R.W.'s injuries were caused by a constitutional violation—or whether she was seized in violation of the Fourth Amendment—as the District is not subject to municipal liability.

## II. State Law Negligence Claim

Plaintiffs have also brought a state-law negligence claim in which they assert that Defendant breached its duty to care for K.R.W. by restraining her and, therefore, "failing

---

[6] Plaintiffs state in the Response that Defendant's Motion is "premature at best" as "discovery is ongoing and many issues of fact and disputes are still being investigated." (Doc. No. 42, at 26). However, the Court has granted two separate motions to extend deadlines in this case. (*See* Doc. Nos. 28, 34). In the Court's last Order, the Parties were informed that "no further extensions will be granted." (Doc. No. 34, at 1). Discovery was to be completed by November 30, 2022. Plaintiffs have not shown by affidavit or declaration that they "cannot present facts essential to justify [their] opposition" to the Motion pursuant to Fed. R. Civ. P. 56(d), nor has Plaintiffs' counsel provided the Court an explanation as to why discovery has not been completed. *Id.*

to provide appropriate care and follow the IEP guidelines as previously established." (Doc. No. 11, at 10; Doc. No. 42, at 19-26). When a district court dismisses all federal claims, "the court may, and usually should decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998); *see also Nation v. Piedmont Indep. Sch. Dist. No. 22,* No. 21-6123, 2022 WL 4075595, at *8 (10th Cir. Sept. 6, 2022) (concluding that after granting summary judgment in an action brought under 42 U.S.C. § 1983 against a school district, the district court should have dismissed the remaining state-law negligence claim without prejudice). Thus, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state-law negligence claim pursuant to 28 U.S.C. § 1367(c)(3). Accordingly, Plaintiffs' state-law negligence claim is remanded to the District Court of Oklahoma County.

## Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment is GRANTED as to Plaintiffs' substantive due process claim brought under 42 U.S.C. § 1983. Plaintiffs' state-law negligence claim is REMANDED to the District Court of Oklahoma County. Judgment shall be entered accordingly.

**IT IS SO ORDERED** this 21st day of December 2022.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE